IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

KIMBERLY BRABOY,

                    Plaintiff,

        v.

UNITED STATES OF AMERICA,

                    Defendant.

HONORABLE JEROME B. SIMANDLE

Civil No. 16-3105 (JBS/JS)

**OPINION**

APPEARANCES:

Anthony John Leonard, Esq.
Paul H. Schultz, Esq.
LEONARD SCIOLLA HUTCHINSON LEONARD & TINARI LLP
713 East Main Street, Suite 1A
Moorestown, NJ 08057
        Attorneys for Plaintiff

Anne B. Taylor, Assistant U.S. Attorney
OFFICE OF THE U.S. ATTORNEY, DISTRICT OF NEW JERSEY
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101
        Attorney for Defendant

**SIMANDLE**, **District Judge**:

I.   **INTRODUCTION**

        This is a Federal Tort Claims Act case arising out of a
slip and fall suffered by Plaintiff Kimberly Braboy in the
Exchange store at the Joint Base Maguire-Dix-Lakehurst on July
4, 2014. Defendant United States of America moves for summary
judgment [Docket Item 11] on two theories: 1) there is no
genuine dispute of material fact that the sole "proximate cause"

of Plaintiff's injury was her own inattention (rather than any negligence attributable to Defendant), as she was looking at her cellular telephone while walking down the store aisle whereupon she slipped on a clothes hanger; and/or 2) Plaintiff's negligence exceeds Defendant's negligence and she is barred from recovering damages. [Docket Item 11-2 at 6.]

For the reasons set forth below, the Court will deny Defendant's Motion for Summary Judgment.

## II. BACKGROUND[1]

### A. Procedural Background

Plaintiff filed this action on May 31, 2016, against Defendants Joint Base McGuire-Dix-Lakehurst Exchange and Army & Air Force Exchange Service, alleging one count of negligence. [Docket Item 1.] Subsequently, the parties agreed to substitute Defendant United States of America as the sole defendant in this action. [Docket Item 7.] Defendant then filed the instant motion for summary judgment [Docket Item 11]; Plaintiff filed a

---

[1] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to Plaintiffs' Complaint [Docket Item 1] when appropriate, Defendant's Statement of Undisputed Material Facts [Docket Item 11-1], Plaintiff's Response to Statement of Material Facts (including Plaintiff's Supplemental Statement of Material Facts) [Docket Item 13 at 20-28], Defendant's Statement to Plaintiff's Supplemental Statement of Material Facts [Docket Item 15-1], and related exhibits and documents.

Response in Opposition [Docket Item 13]; and Defendant filed a Reply [Docket Item 15].

## B. Factual Background[2]

On July 4, 2014, Plaintiff was at the Exchange store located on the Joint Base McGuire-Dix-Lakehurst (hereinafter "Exchange" or "the Exchange"). The Exchange is similar to a department store or a Target, in that it stocks several different types of goods, ranging from hardware to clothing.

On that date, Plaintiff was walking down what both parties agree is either the (or "a") "main aisle" of the exchange [Docket Items 11-1 ¶ 9; 13 at 20 ¶ 2], whereupon she slipped on a clothing hanger on the floor of the aisle [Docket Items 11-1 ¶ 2; 13 at 21 ¶ 11] and fell to the ground. The parties agree that the hanger was made of clear plastic with a metal hook (and Plaintiff states that all hangers for clothing at the Exchange were identical and of this same type [Docket Item 13 at 21 ¶ 12]); however, the actual hanger was apparently not preserved. Id. at 22 ¶ 13.

Video surveillance footage, covering the time period beginning approximately 20 seconds before Plaintiff fell and continuing for some twenty (20) minutes thereafter (until

---

[2] Where not otherwise noted, the facts in this section are undisputed by the parties.

Plaintiff was removed by paramedics) [id. at 22 ¶ 14], was preserved. Although some witnesses, when viewing the video footage, are able to identify the hanger, others are not. [Docket Items 11-1 ¶¶ 15-17; 13 at 22-23 ¶ 15.]

Defendant states that the video shows "Plaintiff hold[ing] her cell phone in front of her face as she walks down the aisle" and then "stepping on a hanger, slipping, and falling to the ground." [Docket Item 11-1 ¶¶ 16-17.] Plaintiff responds that "[t]here is no dispute that Ms. Braboy was using her cell phone at the time of her fall. Ms. Braboy's cell phone was small and she was able to see around it to observe the ground in front of her and her surroundings in general" and again disputes that the video shows the hanger. [Docket Item 13 at 23 ¶¶ 16-17.] Plaintiff also notes, by way of denial of Defendant's submitted assertion that "Plaintiff did not see the hanger she stepped on because she was looking at her cell phone" [Docket Item 11-1 ¶ 19], that she has stated "that if the hanger was not clear in color she would have been able to see it with her peripheral vision and would have avoided it." [Docket Item 13 at 23 ¶ 19, citing Braboy Declaration, Docket Item 13 at 29-30, ¶ 10.]

Specifically, Defendant points to the following exchanges in Plaintiff's deposition:

Q. Did you see the hanger before you stepped on it?
A. No.

Q. Were you looking ahead of you while you were walking?
A. I was looking at my cell phone.
. . .
Q. . . . When you were walking, was it your sense that you were paying attention to what you were writing to your mom on the phone?
A. Yes.
Q. And at other times where you walked and texted, do you have a general sense of the lay of the land around you while you are walking?
A. I don't know.
Q. Do like you would have a sense of if a rack of clothes is right in front of you, you would kind of walk around it, even if you are still texting?
A. Yes.
Q. But you don't have a specific sense of what's directly in front of you?
A. Correct.
Q. Can you describe what happened while you were walking down the aisle?
A. Umm, I was walking down the aisle and -- on the phone you are asking?
Q. Yes.
A. Umm, I was just going straight ahead. And the next thing I remember is slipping on something. I didn't know what it was at the time, and I fell to the ground.

[Docket Item 11-1 ¶¶ 20-21, citing Plaintiff's Deposition, Docket Item 11-7, at 31:22-33:24.] Plaintiff admits to this, but qualifies such admission: "Ms. Braboy was able to stay on her path of travel by using her peripheral vision to follow the bends and curves in the designated main aisle way of the Exchange. Ms. Braboy did not expect debris to be present on the floor of the main aisle of the Exchange, but would have observed and avoided the hanger if it was not clear in color." [Docket Item 13 at 24 ¶ 21.]

On July 21, 2017, Plaintiff submitted (in conjunction with the filing of her Response in Opposition to the instant Motion) a signed Declaration under penalty of perjury. [Docket Item 13 at 29-30, Braboy Decl.] Plaintiff stated: "During my deposition in this case on February 22, 2017, I was asked certain questions about the circumstances of my fall by Anne Taylor, Esquire, the attorney for the Defendant, United States of America. In reviewing my deposition testimony, my answers, while accurate, were incomplete, and since follow up questions were not asked on these matters, I would like to take the opportunity here to further explain, amplify and supplement my prior deposition testimony." Id. ¶¶ 3-4. She continued:

5. Ms. Taylor asked me about the use of my cell phone at the time of the accident and I admitted that I was texting on my phone.

6. When I stated that I was looking at my cell phone, I did not mean that I was looking exclusively at my cell phone and that I could not see what was in front of me or around me, and this is not how I understood the question. Rather, I understood the question to be confirming that I was in fact looking at and using my cell phone, which I have admitted I was doing.

7. My cell phone is small and, in looking at it, I was still able to see around it to observe the ground in front of me and my surroundings in general.

8. Ms. Taylor asked me if I would have had a "specific sense of what was directly in front of" me and I apparently said no. However, I also stated, and affirm again here, that I would have seen a clothing rack if one was in front of me and would move around it.

9. I was able to stay on my path of travel by using my peripheral vision to follow the bends and curves in the designated main aisle way of the Exchange.

10. I did not expect debris to be present on the floor of the main aisle of the Exchange, however, I believe that if the hanger was not clear in color I would have observed it with my peripheral vision and avoided it.

[Id. ¶¶ 5-10.]

The parties contest the existence and/or nature of Exchange's procedures for inspecting the Exchange's aisles for dangerous conditions: Plaintiff asserts that the Exchange has no such procedures, and Defendant responds that "Exchange employees would pick up things they see on the floor" and area managers are assigned to sections of the floor, although Defendant concedes that Exchange employees "do not have scheduled inspections of the floor of the Exchange[.]" [Docket Items 13 at 24 ¶¶ 26-28; 15-1 ¶¶ 26-28.]

Kacy Whritenour has been the Loss Prevention Manager at the Exchange since 1991. One of her duties is to train employees to prevent slips and falls at the Exchange; she also supervises two other loss prevention employees, Sheryl Kulik and Terence McCormick. Ms. Whritenour prepared the accident report regarding Plaintiff's fall based on her review of the video footage and McCormick's handwritten notes; that report gives the time of the accident as 2:55 PM, and (notwithstanding the apparent "created on" date of the Accident Report) Ms. Whritenour prepared that

report on July 9, 2014. As of that date, Ms. Whritenour had the ability to go back and review the surveillance video for the entire day, including more of the preceding hours and/or minutes before Plaintiff fell, rather than just the segment of footage that was preserved, which started only 20 seconds before the accident.[3] Ms. Whritenour was the person who ultimately made the decision whether or not to retain the surveillance video from the date of the incident, and although Mr. McCormick could have preserved the video, he did not do so. Ms. Whritenour never reviewed or requested to review the video to determine how long the hanger had been on the floor before Plaintiff fell. Ms. Whritenour also did not preserve Mr. McCormick's notes or an email he sent her about his investigation of the fall.

On August 15, 2014, Plaintiff's counsel, Anthony J. Leonard sent a letter to Airwoman First Class Sara Agins via email and certified mail [Docket Item 13 at 105-08], requesting preservation of the surveillance video and other discoverable evidence and warning of the potential for spoliation of

---

[3] The parties have alluded to issues of spoliation of the video footage by Defendant's failure to have preserved an enlarged period of time before the accident, which might be helpful in determining how long the hanger was on the floor of the aisle and how it got there. The Court does not resolve such spoliation issues at this time. If Plaintiff seeks a spoliation inference or other evidentiary relief, Plaintiff may file a motion in limine at least four weeks before trial.

evidence. Defendant states that the surveillance camera that captured footage of Plaintiff's fall "overwrites in the normal course of its operation in four to six weeks." [Docket Item 15-1 ¶ 41.] The result of this was that the segment of video that would have depicted the time period preceding Plaintiff's fall (and would have, presumably, shown when and how the hanger came to lie in the aisle) was deleted and is unavailable. While Defendant stated its belief in its response to interrogatories that the hanger had been on the floor for no more than twenty (20) minutes, Defendant has not identified a basis for such belief and does not know how long the hanger was on the floor. [Docket Item 15-1 ¶¶ 50-51.]

Plaintiff contends that she has suffered severe and permanent injuries to her back as a result of the fall, undergoing surgery, and now uses a cane for walking. [Docket Item 13 at 24 ¶ 22.]

## III. STANDARD OF REVIEW[4]

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[4] The Court exercises federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1346(b), 2401, 2671 to 2680.

matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate for the court to make at the summary judgment stage. Davis v. Portlines Transportes Maritime Internacional, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

Nevertheless, where, as here, there is video footage related to the claims, the Court will not draw inferences that are "blatantly" inconsistent with the video evidence. See Scott v. Harris, 550 U.S. 372, 380–81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment . . . [and thus, t]he Court of Appeals should not have relied on such

visible fiction; it should have viewed the facts in the light depicted by the videotape."). In other words, the existence in the record of a videotape capturing the events underlying a claim presents an "added wrinkle" to the usual standard which requires courts "to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" <u>Id.</u> at 378 (citations omitted). Additionally, video evidence does not blatantly contradict a non-movant's account for summary judgment purposes when the video "does not show what happened during . . . crucial moments." <u>McDowell v. Sheerer</u>, 374 F. App'x 288, 292-93 (3d Cir. 2010).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. <u>Boyle v. Cnty. of Allegheny Pennsylvania</u>, 139 F.3d 386, 393 (3d Cir. 1998) (quoting <u>Anderson</u>, 477 U.S. at 252).

**IV. ANALYSIS**

There is no dispute that New Jersey law of premises liability is the operative body of law applicable to this case and the instant motion. Plaintiff brings suit against Defendant under the Federal Tort Claims Act, which holds the United States liable "only to the extent that in the same circumstances the applicable local law would hold 'a private person' responsible." Lomando v. United States, 667 F.3d 363, 373 (3d Cir. 2011). The Exchange is located in Fort Dix, New Jersey, and New Jersey substantive law applies. 28 U.S.C. §§ 1346(b)(1), 2674; Lomando, 667 F.3d at 373.

Under New Jersey law, a defendant would be liable for negligence where the plaintiff (who has the burden of proof) establishes "that defendant breached a duty of reasonable care, which constituted a proximate cause of plaintiff's injuries. . . . The proprietor of a business 'owes a duty of reasonable care to those who enter the premises upon [an] invitation [for business purposes] to provide a reasonably safe place to do that which is within the scope of the invitation.' Butler v. Acme Mkts., Inc., 89 N.J. 270, 275 (1982)." Keith v. Truck Stops Corp. of America, 909 F.2d 743, 745 (3d Cir. 1990)(internal citation omitted)(alterations in original). The Third Circuit has stated that even in a case where there was "no direct

evidence" as to how the mechanism of injury came about, liability could attach where "there was circumstantial evidence from which a jury could reasonably conclude that defendant was negligent in failing to maintain its premises in a reasonably safe condition for a business invitee." Keith, 909 F.2d at 745.

"[T]o the invitee or business guest . . . a landowner owe[s] a duty of reasonable care to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered. That standard of care encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993).

However, "not every property condition on which persons can hurt themselves is unreasonably dangerous or hazardous. If ordinary persons who are likely to encounter a condition may be expected to take reasonable care without further warnings, and if the condition is plainly visible with no unusual features and in a place where they would naturally look for it, then the condition is not unreasonably dangerous." Robertson v. Cousins Wholesale Produce, Inc., No. L-3898-07, 2010 WL 2867928, *3 (Sup. Ct. App. Div. July 20, 2010). In that case, the Appellate Division found that a plaintiff could not state a claim for negligence as a matter of law where the plaintiff, instead of

using a normal exit door, walked out onto a loading dock through hanging plastic curtains and fell three feet down, stating that "defendant provided plaintiff other means of safe egress from the facility, yet plaintiff chose an exit with a physically obvious condition, of which he was fully aware, and which could have been encountered safely without further precautions or warnings." Id.

**A. Proximate Cause**

Defendant argues that summary judgment is warranted because Plaintiff has not adduced sufficient evidence such that a reasonable finder of fact could conclude that Defendant's alleged breach of the duty not to have a hanger in the aisle (rather than Plaintiff's own inattention) proximately caused Plaintiff's injuries. The Court disagrees.

"To prove a breach of duty proximately caused an alleged injury, a plaintiff must establish 'any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.' Townsend v. Pierre, 221 N.J. 36, 51 (2015)." White v. Astacio, No. L-4771-11, 2017 WL 3091772, *4 (Sup. Ct. App. Div. July 21, 2017)(further internal citation omitted). "Intervening causes that are reasonably foreseeable or are normal incidents of a risk,

however, do not relieve a tortfeasor of liability." <u>Cruz-Mendez</u>
<u>v. ISU/Insurance Svcs. of San Francisco</u>, 156 N.J. 556, 575-76
(1999)(question of proximate cause was fact question for jury).
<u>Cf.</u> <u>Flint v. Langer Transport Corp.</u>, 480 Fed. App'x 149, 152 (3d
Cir. 2012)(no reasonable factfinder could find proximate
causation where negligence at issue was that of tank terminal
company in allowing corrosive-to-aluminum liquid to fill
aluminum trailer and injury complained of was to different
fellow-truck-driver who fell from top of truck in rainy weather
when trying to switch trailers after discovery of the error).

"The first and most basic concept 'buried' within proximate
cause is that of causation in fact. Cause in fact is sometimes
referred to as 'but for' causation. In the routine tort case,
'the law requires proof that the result complained of probably
would not have occurred "but for" the negligent conduct of the
defendant.'" <u>Conklin v. Hannoch Weisman</u>, 145 N.J. 395, 417
(1996)(quoting <u>Vuocolo v. Diamond Shamrock Chemicals Co.</u>, 240
N.J. Super. 289, 295 (App. Div. 1990)). Courts have recognized
causation in fact where "negligence . . . 'creates' a risk of
intervening harm." <u>Id.</u> (citing <u>Kelly v. Gwinnell</u>, 96 N.J. 538,
543 (1984)(host who serves alcohol to a visibly intoxicated
guest creates the risk of harm ultimately caused by the drunken
driver-guest)). "Generally, our concepts of causation for

failure to act are expressed in terms of whether the negligent conduct may be considered a substantial factor contributing to the loss." Id. at 419. Similarly, "[i]n complex, concurrent cause cases, a plaintiff must prove the alleged tortfeasor's negligence was a 'substantial factor' in causing the harm." Marquess v. Avalon Country Club, No. L-439-14, 2017 WL 2391940, *2 (App. Div. Sup. Ct. June 2, 2017)(citing Conklin, 145 N.J. at 419-20). "A proximate cause need not be the sole cause of harm. It suffices if it is a substantial contributing factor to the harm suffered." Perez v. Wyeth Laboratories, Inc., 161 N.J. 1, 27 (1999).

More broadly, proximate causation "is that combination of logic, common sense, justice, policy and precedent that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery." People Exp. Airlines, Inc. v. Consolidated Rail Corp., 100 N.J. 246, 264 (1985)(internal quotations omitted).

"While causation is an issue ordinarily determined by the factfinder, 'in the unusual setting in which no reasonable factfinder could find that the plaintiff has proven causation by a preponderance of the evidence, summary judgment may be granted.'" Marquess, 2017 WL 2391940 at *2 (quoting Townsend, 221 N.J. at 60). See also Perez, 161 N.J. at 27 ("Ordinarily,

issues of proximate cause are considered to be jury questions"
(citing <u>Garrison v. Twp. of Middletown</u>, 154 N.J. 282, 308
(1998)(Stein, J., concurring))).

In <u>White</u>, the Appellate Division held that the plaintiff
could not establish a genuine issue of fact as to proximate
cause where the plaintiff's expert "opined that it was the
breach of the duty to have a shepherd's crook and a water
watcher [i.e., a lifeguard, essentially] that proximately
caused" the drowning death of an adult social guest in a
residential swimming pool, where the "action taken by [another
adult]--to hop over the fence, dive into the pool and pick up
[the decedent]--would have been the correct course of action
even if a shepherd's crook had been present and would also have
been faster than attempting to rescue" the decedent with a
shepherd's crook; similarly, that course of conduct
"correspond[ed]" to what the plaintiff's expert testified "a
designated water watcher" would have done. <u>Id.</u> Accordingly, the
court found that "[o]n this record, no reasonable factfinder
could conclude that the failures to have a shepherd's crook or a
water watcher constituted breaches of a duty that proximately
caused" the decedent's death. <u>Id.</u>

Defendant agrees that, to "establish that the hanger on the
floor proximately caused her fall, Plaintiff must establish

that, in a natural and continuous sequence, the hanger would have caused a fall, i.e., that but for the hanger, Plaintiff would not have fallen. N.J. Model Jury Charge (Civil) 6.11 'Proximate Cause' (April 2016); Vuocolo v. Diamond Shamrock Chem. Co., 240 N.J. Super. 289, 294-95 (App. Div. 1990)[.]" [Docket Item 11-2 at 13.] Defendant continues that Plaintiff "cannot establish this 'but for' causation, however, because her complete failure to pay attention to her surroundings caused her fall. Had Plaintiff paid even a modicum of attention, she surely would have noticed the hanger on the floor and at least attempted to avoid stepping on it. Instead, Plaintiff was entirely focused on her cell phone. But for her complete absorption in her cell phone, Plaintiff would have seen and avoided the hanger on the floor, and thus avoided her fall and subsequent injury." Id. at 14. Defendant again argues that the hanger was not the cause of Plaintiff's fall, stating that her testimony "establish[es] that she failed to make any effort to observe what was in front of her and to exercise due care." [Docket Item 15 at 7.]

The Court disagrees with the proposition that no reasonable factfinder could conclude that the hanger was a substantial factor in causing Plaintiff to fall. The case law is replete with cases involving slip-and-fall accidents occasioned by

objects that--had they been noticed--were clearly visible and
would most likely have been avoided. <u>See</u>, <u>e.g.</u>, <u>Wollerman v.</u>
<u>Grand Union Stores, Inc.</u>, 47 N.J. 426, 428 (1966)(shopper
slipped and fell when she stepped on a string bean); <u>Nisivoccia</u>
<u>v. Glass Gardens, Inc.</u>, 175 N.J. 559 (2003)(shopper slipped and
fell on some loose grapes lying about near checkout lanes);
<u>Walker v. Costco Wholesale Warehouse</u>, 445 N.J. Super. 111, 114,
126 (App. Div. 2016)(shopper slipped on substance that "had 'a
white appearance like a yogurt-based product'" and may have been
a sample of cheesecake "which may well have become softer,
creamier, and more 'yogurt-like' in appearance after being
displayed in sample cups for some unspecified time at room
temperature").

While the Appellate Division has stated that "a pedestrian
has a . . . duty to watch where he is walking and to avoid
hazards that are discoverable through ordinary care[,]" <u>Quinton</u>
<u>v. Greenblatt</u>, No. L-9549-06, 2011 WL 3667620, *2 (Sup. Ct. App.
Div. Aug. 23, 2011), it did so in the context of ruling that a
jury was permitted to consider, as a question of fact, whether a
plaintiff had been contributorily negligent "in failing to
observe for unsafe conditions [while walking down a sloped
driveway thinly covered with snow]."[5] It did not hold that

---

[5] Contributory negligence will be discussed <u>infra</u>.

another cause could not also be a substantial factor in causing

an injury to a plaintiff who breached that duty. Furthermore, in

<u>Krackomberger v. Vornado, Inc.</u>, the Appellate Division expressly

held in the context of a slip and fall in a clothing store that

a plaintiff's admission "that immediately before she fell she

had been looking at the displays on the counter rather than

looking at the floor" must be weighed against her "right to

assume that defendant had performed its duty of exercising

reasonable care to maintain the aisle in a reasonably safe

condition." 119 N.J. Super. 380, 383 (App. Div. 1972). Although

the trial court charged the jury that "she was not required to

maintain a continuous surveillance of the floor[,]" the

Appellate Division ruled that it was error to deny a requested

charge stating that "'Mrs. Krackomberger had the right to assume

that the floor of the defendant's store was free from

obstruction as she walked down the aisle. This right existed

until she was aware or should have been aware of the hazard

which caused her fall.'" <u>Id.</u> at 382-83.[6]

---

[6] <u>Krackomberger</u> is also framed in terms of contributory
negligence, discussed <u>infra</u>, rather than as a failure to
demonstrate proximate causation or causation-in-fact. The court,
stating that the plaintiff's "[c]ontributory negligence could be
based only upon the fact that immediately before the accident
[the plaintiff] had been looking at the display rather than the
floor[,]" went on to state that "[t]he mere fact that plaintiff
was not looking at the floor was not enough to establish
contributory negligence--there was no certainty that even had

The Court notes a New Jersey court's citation with approval, in <u>Zentz v. Toop</u>, 92 N.J. Super. 105, 112-13 (App. Div. 1966), the passage of 2 Harper and James, Torts, § 27.13, pp. 1489-93 (1956), wherein it is stated that

> the fact that a condition is obvious--i.e., it would be clearly visible to one whose attention was directed to it--does not always remove all unreasonable danger. It may fail to do so in two lines of cases. In one line of cases, people would not in fact expect to find the condition where it is, [o]r they are likely to have their attention distracted as they approach it, or, for some other reason, they are in fact not likely to see it, though it could be readily and safely avoided if they did. There may be negligence in creating or maintaining such a condition even though it is physic[ally] obvious; slight obstructions to travel on a sidewalk, an unexpected step in a store aisle or between a passenger elevator and the landing furnish examples. Under the circumstances of any particular case, an additional warning may, as a matter of fact, suffice to remove the danger, as where a customer, not hurried by crowds or some emergency, and in possession of his faculties, is told to "watch his step" or "step up" at the appropriate time. When this is the case, the warning satisfies the requirement of due care and is incompatible with defendant's negligence. Here again, plaintiff's recovery would be prevented by that fact no matter how careful he was. But under ordinary negligence principles the question is properly one of fact for the jury except in the clearest situations.

<u>See also</u> N.J. Model Jury Charge (Civil) 5.20F at 41-43 (quoting same).

Furthermore, when assessing the facts in the light most

---

she been looking down she would have observed the offending object--either because it was clear and colorless or because of the racks which were encroaching upon the aisle." <u>Id.</u> at 383-85.

favorable to Plaintiff as the non-movant, a reasonable finder of fact could conclude that she would not have fallen but for the hanger in the aisle. The surveillance footage of the incident, for instance, would allow the finder of fact to conclude that Plaintiff, notwithstanding that she was texting her mother while she was walking, was navigating the aisle of the Exchange without substantial difficulty, and would likely have continued to do so without slipping and falling had the hanger not been in her path. While Plaintiff's attention (or conscious attention) may have been elsewhere, the characteristics of the hanger on the floor of the main aisle preclude a finding, as a matter of law, that the hanger played no substantial role in causing Plaintiff's fall. It could be said that this clear plastic item on the floor, which may also have eluded the attention of the store's staff for a significant period of time, was nonetheless so obvious to a prudent shopper that it could not have been the cause of the accident. In the light most favorable to Plaintiff, whether or not the hanger or Plaintiff's alleged inattention predominated in causing Plaintiff's fall is not dispositive, as "'[l]iability attaches not only to the dominating cause but also to any cause which constitutes at any event a substantial factor in bringing about the injury.'" <u>Dawson v. Bunker Hill Plaza Assocs.</u>, 289 N.J. Super. 309, 323 (App. Div. 1996)(quoting <u>Peer</u>

<u>v. City of Newark</u>, 71 N.J. Super. 12, 28 (App. Div. 1961)).

Comparing the instant case to <u>White</u>, the court there ruled that plaintiff could not show proximate cause because the alleged breach of duty did not lead to the injury: had a shepherd's crook been available, or a designated water watcher been present, the actions that were actually undertaken (i.e., another adult diving in and retrieving the decedent within a minute or two of his going under water) still would have been the best course of conduct, but had nevertheless been inadequate to prevent the drowning. Here, the alleged breach of duty was, allegedly, the failure to detect and remove the hanger from the aisle; had that breach of duty not been present (i.e., had an employee removed the hanger), a reasonable finder of fact could conclude that Ms. Braboy would not have fallen--notwithstanding that she was texting while she was walking.

Accordingly, the Court finds a genuine dispute of material fact as to proximate cause, and will deny Defendant's motion for summary judgment on this ground.

**B. Comparative Negligence**

Defendant argues, second, that because Plaintiff's inattention to her surroundings was also a substantial factor in causing her to fall, she may not recover under New Jersey principles of comparative negligence. [Docket Item 11-2 at 14.]

New Jersey law provides that "[c]ontributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery was sought[.] . . . Any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering." N.J.S.A. 2A:15-5.1. In other words, a plaintiff who is deemed more than 50% at fault for the injury incurred may not recover from the defendant.

This Court previously addressed liability stemming from a slip and fall in a supermarket where, analogously, the defendant supermarket claimed that it bore no liability because, the plaintiff having seen the hazard (grapes and water on the floor), the danger was open and obvious. <u>Gabriel v. Safeway, Inc.</u>, No. 10-2256, 2011 WL 5864033, at *10 (D.N.J. 2011). Discussing New Jersey precedent, the Court relied on <u>Krackomberger</u> and stated that "patrons in a supermarket have the right to assume that the defendant supermarket had performed its duty of exercising reasonable care to maintain the aisle in a reasonably safe condition. This right exists until the patron becomes aware or should have been aware of the hazard which allegedly caused the accident. If the patron was aware of the

hazard and was not exercising due care for her own protection, then the patron was negligent. The contributory negligence of the patron is not a bar to recovery unless it was a substantial factor in bringing about the harm." Gabriel, 2011 WL 5864033 at *10 (citing Krackomberger, 119 N.J. Super., at 383)(internal quotations, citations, and alterations omitted). Defendant relies on the statement that "the contributory negligence of the patron is not a bar to recovery unless it was a substantial factor in bringing about the harm[,]" arguing, here, that no reasonable factfinder could fail to conclude that Plaintiff's inattention was a substantial factor in her fall. However, in Gabriel, the Court found that

> the degree of [the plaintiff's] negligence [in deliberately walking through water and grapes on the floor] when compared with the Defendants' negligence is a disputed issue of fact and a question for a jury. Giving all favorable inferences to the Plaintiff, a rational jury could find that the Plaintiff's negligence was not a substantial factor in bringing about the harm. Everyday experience teaches that it may, or may not, be negligent to walk through, or attempt to step past, some hazard in the pathway; the jury must assess all the circumstances to determine whether Plaintiff's decision to attempt to cross over the spillage was so unreasonable that her comparative negligence exceeded that of the Defendants in their mode of operation of the produce department. It is only if Plaintiff's comparative negligence exceeds 50% of the total fault that her recovery is barred; this Court cannot say, as a matter of law, that no reasonable jury could find Plaintiff's negligence was less than 50% of the total fault for this accident.

Gabriel, 2011 WL 5864033, at *11 (emphasis added). Thus, the

plaintiff's purported comparative negligence only operates as a bar to recovery if it exceeds 50% of the total fault, in comportment with N.J.S.A. 2A:15-5.1. See also Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 109 (2004)("We begin by enunciating certain key principles that govern New Jersey's modified comparative negligence system. . . . [A] plaintiff who is found to be more than fifty percent at fault is entitled to no recovery. A plaintiff who is found to be fifty percent or less at fault is entitled to a recovery, but any award of damages is diminished by the percentage of negligence attributed to her."); Rogers v. Spady, 147 N.J. Super. 274, 275 (App. Div. 1977)(overruled by statute on other grounds, Kiss v. Jacob, 268 N.J. Super. 235, 248 (App. Div. 1993))(discussing "application of the 1973 Comparative Negligence Law (N.J.S.A. 2A:15-5.1 Et seq.)"). Krackomberger predated the Comparative Negligence Law, and it is that law that represents the current state of New Jersey law with regard to comparative or contributory negligence. Plaintiff is not barred from recovery if her negligence was a substantial factor in her injury, but this is so only if it constituted not more than 50% of the cause of the injury. This Court is not aware of any precedent which suggests that Plaintiff's inattention should be held to constitute greater than 50% of the cause of this accident, as a matter of

law, and declines to so hold. This is squarely within the province of the finder of fact.

As in <u>Gabriel</u>, the Court finds that this is an issue of fact appropriate for resolution by the finder of fact, and not on a motion for summary judgment. Accordingly, the Court will deny Defendant's motion for summary judgment as to comparative negligence as well. Whether Plaintiff's inattentiveness surpasses 50% of the causal negligence of her injuries, and thus bars her recovery, is a matter of genuine factual dispute, to be resolved at trial.[7]


## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion. The accompanying Order will be entered.


 **April 30, 2018**         **s/ Jerome B. Simandle**
Date                      JEROME B. SIMANDLE
                          U.S. District Judge

---

[7] Under the FTCA, this case must be tried to the court without a jury, see 28 U.S.C. § 2402. That the undersigned District Judge may also be the fact finder at any eventual trial does not change the standards that must apply in deciding this summary judgment motion under Rule 56, Fed. R. Civ. P., nor should the Court's findings of material facts being in dispute be interpreted as a prediction that a party is likely to succeed at trial.